UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HUCUL,<br><br>                                Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ADMINISTRATION FOR CHILDREN AND FAMILIES; and OFFICE OF CHILD SUPPORT ENFORCEMENT,<br><br>                                Defendants. | Case No.: 20cv0035-GPC(AGS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[DKT. NOS. 17, 18.]** |

Before the Court are both parties' motions for summary judgment. (Dkt. Nos. 17, 18.) Both parties filed their oppositions and replies. (Dkt. Nos. 20, 21, 22, 23.) A telephonic hearing was held on February 26, 2021. (Dkt. No. 25.) Plaintiff Michael Hucul appeared pro se and Rebecca Church, Esq. appeared on behalf of Defendants. Pursuant to the Court's direction at the hearing, both parties filed a supplemental brief on March 4, 2021. (Dkt. Nos. 26, 27.) Based on a careful review of the parties' papers, the supporting documentation, the applicable law, and the arguments raised at the hearing, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment.

**Background**

Plaintiff Michael Hucul ("Plaintiff" or "Hucul"), proceeding pro se, filed a complaint against Defendants U.S. Department of Health and Human Services ("HHS") and the Administration of Children and Families ("ACF") and the Office of Child Support Enforcement ("OCSE"), which are components of HHS, for one count of a violation of the Freedom of Information Act ("FOIA"). (Dkt. Nos. 1, 7.) Plaintiff brings a complaint for declaratory and injunctive relief seeking to compel the disclosure of agency records allegedly withheld by Defendants. (Dkt. No. 1.)

On October 1, 2019, Plaintiff emailed his FOIA request, consisting of three paragraphs, seeking the following documents:

> [1] Please provide any and all information, letters, certifications, correspondences, all data including emails sent or received by you from the State of California or it's [sic] counties from 2013 to the present of their yearly certifications for their child support programs under 45 C.F.R. §301.12 & §301.13 including any and all information, letters, certifications, correspondences, all data including emails sent or received by the Office of Child Support Enforcement during its review if [sic] the State of California plan under 45 C.F.R. §301.13, §301.14, & §301.15.
>
> [2] Please provide, from 2013 to the present, any and all information, letters, certifications, correspondences, all data including emails sent or received, approvals, and amounts of Federal Incentive money sent to the State of California under 42 USC 658a(a)(5)(C) [sic]. And also from 2013 to the present please provide any and all information, letters, certifications, correspondences, all data including emails sent or received where the State of California or it's [sic] counties certified the child support incentives they received were for child support payments received by "non-custodial parents", and/or are they receiving incentive money for child support payments received by "custodial" or "joint-custodial parents".
>
> [3] Also, who the [sic] the State of California child support commission is under Section 15 of Public Law 98-387?

(Dkt. No. 17-1, Smith Decl., Ex. B.)

On October 2, 2019, Defendants' ACF Freedom of Information/Privacy Act Division ("ACF-FOIA") received the request and sent Plaintiff a letter acknowledging receipt of the request and assigned a FOIA request control number 20-F-0005. (Dkt. No. 17-1, Smith Decl. ¶¶ 7, 10; *id.*, Ex. C.) The letter explained that the actual processing time will depend on the "complexity of your request and whether sensitive records, voluminous records, extensive, search, and/or consultation with other HHS components or other executive branch agencies are involved." (Dkt. No. 17-1, Smith Decl., Ex. C.)

OCSE started conducting a search on October 17, 2019 that lasted until November 6, 2019 and during this time located potentially responsive documents and then sent these documents to ACF for processing. (*Id.* ¶¶ 12, 17-25.) During the processing, Plaintiff filed his FOIA complaint on January 7, 2020. (*Id.* ¶ 26.)

On May 15, 2020, ACF made its first production of documents to Plaintiff consisting of 873 pages[1] which included 335 released in full and 538 released in part withholdings made under Exemptions (b)(5) and (b)(6)[2] pursuant to 5 U.S.C. §§ 552(b)(5) and (b)(6). (*Id.* ¶ 27, *id.*, Ex. D.)

During June 17, 2020 and July 8, 2020, OCSE conducted an electronic search for files and reports stored in the various databases. (*Id.* ¶ 31.) This search located, *inter alia,* incentive payments because they are reported in the Annual Report to Congress and Preliminary Data Report and located 219 pages of potentially responsive documents. (*Id.*)

---

[1] In response, Plaintiff challenges the number of pages Defendants assert he received; instead, he claims he received 677 pages where 201 were duplicates and 192 were blank. (Dkt. No. 21-1, P's Response to Ds' SSUF No. 12.) Despite the disputed fact, the number of pages produced is not material to resolving the claims on summary judgment.

[2] Exemption 6 provides that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

On July 10, 2020, ACF made its second production of responsive records and released 1,092 pages.[3] (*Id.* ¶ 14.) It released the 219 pages regarding the federal incentive money sent to California and removed documents under Exemption (b)(6) for signatures and work cell phones of federal employees. (*Id.* ¶ 32; *id.*, Ex. E.) ACF also re-released 873 pages that were previously withheld under Exemption (b)(5) on the first production after it conducted a supplemental search and reconsidered its application of that exemption. (*Id.* ¶¶ 28, 32.) On July 13, 2020, ACF produced 83 pages of grant award notification for fiscal years 2013 to 2019 which included information about California's incentive payments. (*Id.* ¶ 35.)

On July 15, 2020, Plaintiff sent an email to defense counsel seeking additional records including California's Interstate Reconciliation Report ("IRR"), the California Federal Case Registry ("FCR") and California Interstate Case Registry ("ICR") and OSCE reports 34, 157, 396 ("OCSE-34, OCSE-157, and OCSE-396 reports."). (*Id.* ¶ 36; *id.*, Ex. F.) Even though ACF had not considered OCSE-34, OCSE-157, and OCSE-396 reports to be responsive, as these reports are used by states to report data necessary to calculate each states' incentive fund amount and not "approval" or "amounts" of incentive payments that the FOIA request sought, ACF determined to process them as a courtesy to Plaintiff. (*Id.* ¶ 38.) As a result, OCSE located 224 pages of these records and made a supplemental production of these documents with withholdings made under Exemption (b)(6). (*Id.* ¶ 41; *id.,* Ex. G.) However, ACF determined that California's IRR, FCR and ICR were not responsive to the FOIA request because they are not used to calculate incentive payments. (*Id.* ¶ 37.) Further, they would have been exempt as they contain personally identifiable information. (*Id.*)

---

[3] Plaintiff again claims he only received 1,231 pages on the second production and not the 1092 pages Defendants assert he received. (Dkt. No. 21-1, P's Response to Ds' SSUF No. 14.) As noted before, the disputed number of pages is not material to a ruling on the summary judgment motions.

Defendants explain that the IRR promotes synchronizing interstate cases with other states and strengthening automated communication by comparing interstate cases. (*Id.*) This process includes determining if the cases and participants match, identifying discrepancies, and providing details about them and contains personally identifiable information from child support cases, such as name, address, date of birth, ("DOB"), and social security number ("SSN") of child support parties. (*Id.*) The FCR is a database mandated by federal law that contains basic case and participant data from each of the State Case Registries (SCR). (*Id.*) The SCRs, also mandated by federal law, are central registries of child support cases and orders in each state. (*Id.*) The FCR is integral to the success of the Federal Parent Locator Service. (*Id.*) These databases contain personally identifiable information from child support cases, such as name, address, DOB and SSN. (*Id.*) The California ICF is a registry of California's intergovernmental child support cases with other states. (*Id.*) Like the IRR, and FCR, this registry also contains personally identifiable information from child support cases, such as name, address, DOB and SSN. (*Id.*)

## Discussion

### A.    Legal Standard on Summary Judgment

The typical summary judgment standard applies to FOIA cases. *See Cameranesi v. United States DOD*, 856 F.3d 626, 636 (9th Cir. 2017) ("We have now overruled this FOIA-specific summary judgment standard, and instead apply our usual summary judgment standard."); *see also Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989–90 (9th Cir. 2016) ("there is no principled distinction to be drawn between our usual summary judgment standard and the standard to be applied in FOIA cases . . . summary judgment may be granted only when there are no disputed issues of material fact, and thus no factfinding by the district court.").

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477

U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.,* 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of .his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.  v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

/ / /

/ / /

## B. Legal Standard on FOIA

"The basic purpose of the [FOIA] is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (citations omitted). Therefore, the FOIA calls for "broad disclosure of Government records." *CIA v. Sims,* 471 U.S. 159, 166 (1985). Under FOIA, an individual may request access to federal agency documents under 5 U.S.C. § 552. With certain exception, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The statute enumerates nine exemptions under which the government may withhold documents or portions of document. 5 U.S.C. § 552(b)(1)-(9). Once the request that reasonably describes the records is made on the agency, the agency is required to conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Lahr v. NTSB*, 569 F.3d 964, 986 (9th Cir. 2009). The agency may prove the reasonableness of its search by the declaration of a responsible agency official. *Id.* If the individual is not satisfied with the agency's response, he or she may file a complaint asking the district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting 5 U.S.C. § 552(a)(4)(B) ("[t]he FOIA confers jurisdiction on the district courts 'to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld.'").

A district court will only have jurisdiction in a suit under FOIA when "an agency has (1) improperly (2) withheld (3) agency records." *Tax Analysts*, 492 U.S. at 142 (internal quotations omitted) (quoting *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980)). The agency has the burden "to demonstrate, not the

requester to disprove, that the materials sought are not agency records or have not been improperly withheld." *Id.* at 143 n.3 (internal quotations and citations omitted). Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley v. C.I.A.*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (citation omitted). Summary judgment is inappropriate "if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials . . . ." *Hamdan*, 797 F.3d at 771 (internal citation and quotation marks omitted).

## C.  Analysis

Defendants move for summary judgment arguing they have reasonably interpreted the FOIA request, properly processed it and produced all responsive records with the exception of certain private information pursuant to Exemption (b)(6).[4] (Dkt. No. 17.) Plaintiff does not dispute that Defendants have produced documents responsive to the first paragraph of the FOIA request which was confirmed at the hearing, or that the information sought in the third paragraph was not properly produced.[5] Therefore, the

---

[4] Defendants also move for summary judgment on the claim that they failed to comply with the statutory deadline to provide the documents under 5 U.S.C. § 552(a)(6)(A), (Dkt. No. 1, Compl. ¶ 20), as moot. (Dkt. No. 17 at 19.) Plaintiff does not address this issue and appears to concede the claim. "For specific FOIA request claims, after the agency produces all non-exempt documents and the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied." *Hajro v. U.S. Citizenship and Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016). Here, because non-exempt documents have been produced, the Court GRANTS Defendants' motion for summary judgment on the timeliness issue as unopposed and moot.

[5] On the third paragraph, Defendants argue that they are not required to respond to questions and additionally the State Commission on Child Support developed under Section 15 of Public Law 98-378 no longer exists. (Dkt. No. 17 at 7 n. 1.) In response, Plaintiff does not dispute that the agency does not have to respond to questions but only asserts that Section 15 of Public Law 98-378 still exists. (P's Response to Ds' SSUF No. 4.) FOIA does not require an agency to answer questions. *See Yagman v. Pompeo*, 868 F.3d 1075, 1080–81 (9th Cir. 2017); *Judicial Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 455-56 (D.D.C. 2016), *aff'd* 681 F. App'x 2 (D.C. Cir. 2017) ("A question is not a request for records under FOIA and an agency has no duty to answer a question posed as a FOIA request."). Nonetheless, Plaintiff does not challenge Defendants' argument. Moreover, contrary to Plaintiff's

Court GRANTS Defendants' motion for summary judgment on the production of documents contained in the first and third paragraphs as unopposed.

Plaintiff opposes Defendants' motion for summary judgment and moves for summary judgment on the second paragraph of the FOIA arguing Defendants failed to provide him with the "custodial status of the parents, the parent's names, and their associated case numbers." (Dkt. No. 21 at 12; *see also* Dkt. No. 18 at 10; Dkt. No. 23 at 12.) Defendants reply that they produced all responsive records and Plaintiff now seeks additional records that is outside the scope of his FOIA request. (Dkt. No. 22 at 2-3.)

The second paragraph of the FOIA seeks the following:

> Please provide, from 2013 to the present, any and all information, letters, certifications, correspondences, all data including emails sent or received, approvals, and amounts of Federal Incentive money sent to the State of California under 42 USC 658a(a)(5)(C). **And also from 2013 to the present please provide any and all information, letters, certifications, correspondences, all data including emails sent or received where the State of California or it's [sic] counties certified the child support incentives they received were for child support payments received by "non-custodial parents", and/or are they receiving incentive money for child support payments received by "custodial" or "joint-custodial parents".**

(Dkt. No. 17-1, Smith Decl., Ex. B (emphasis added).) In other words, Plaintiff requested all documents concerning the amounts of federal incentives paid to the State of California from 2013 to the present under 42 U.S.C. 658a(b)(5)(C)[6] and all information where

---

understanding, the Court notes that Defendants only state that the State Commission on Child Support no longer exits, not that the statute no longer exists.

[6] (C) State collections base
For purposes of subparagraph (A), the State collections base for a fiscal year is equal to the sum of--
(i) 2 times the sum of--
(I) the total amount of support collected during the fiscal year under the State plan approved under this part in cases in which the support obligation involved is required to be assigned to the State pursuant to part A or E or subchapter XIX; and

9

California certified that the child support incentives they received were for child support payments made by "non-custodial parents", and/or "custodial" or "joint-custodial" parents.

"In 1974, Congress enacted title IV–D of the Social Security Act for the purpose of enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse) with whom such children are living." *Cnty. of Los Angeles Child Support Servs. Dept. v. Watson*, 942 Cal. App. 5th 638, 641 (2019) (internal quotations and alterations omitted) (quoting *Cnty. of Lake v. Palla*, 94 Cal. App. 4th 418, 421-22 (2001) (citing 42 U.S.C. §§ 651–669b)).  This program was intended "to recoup welfare costs from the absent parents of children being given public assistance." *Id.*

Section 651 authorizes appropriation of funds on a yearly basis in order to achieve the stated goals of Title IV–D which include "enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, establishing paternity, obtaining child and spousal support . . . ." 42 U.S.C. § 651.  "In return for receiving federal funding for public assistance, title IV-D requires the states to provide services related to the establishment, modification, and enforcement of child support obligations." *Palla*, 94 Cal. App. 4th at 421-422   *Id.* Under 42 U.S.C. § 658a, the federal government provides incentive payments to the state based on its performance in certain areas.  42 U.S.C. § 658a(b)(4).

According to the Director of ACF/FOIA, OCSE administers the program established under Title IV-D of the Social Security Act, which provides federal matching funds to states and tribes for the cost of child support enforcement activities meeting the

---

(II) the total amount of support collected during the fiscal year under the State plan approved under this part in cases in which the support obligation involved was so assigned but, at the time of collection, is not required to be so assigned; and
(ii) the total amount of support collected during the fiscal year under the State plan approved under this part in all other cases.

42 U.S.C. § 658a(b)(5)(C).

requirements of Title IV-D.  (Dkt. No. 17-1, Smith Decl. ¶ 11.)  The Social Security Act allows states to submit a plan, and if the plan meets the requirements of Title IV-D of the Social Security Act and regulations at 45 C.F.R. part 300, the State is eligible to receive federal funds matching 66% of the state's eligible child support program expenditures.  *See* 42 U.S.C. § 655.  (*Id.* ¶ 13.)  States are also eligible to receive incentive funds under 42 U.S.C. § 658a, based on performance in five measures -- establishment of paternity and child support orders, collections of current and past-due support payments, and cost-effectiveness.  (*Id.*)  Congress has authorized funds for the federal incentive payments.  (*Id.*)  After the end of each fiscal year, OCSE assesses the states' performance data in accordance with 42 U.S.C. § 652(a)(4) and 45 C.F.R. § 305.60 and allocates the available incentive funding based on each state's performance on the above five measures in accordance with 42 U.S.C. § 658a, and 45 C.F.R. part 305.  (*Id.*)  States are required to use the incentive payments for administrative costs to carry out the State's child support enforcement plan or other allowable activities.  (*Id.*)  Incentive payments are not funded by, nor paid to, any State for use as any form of child support payment.  (*Id.*)  Likewise, incentive payments are not funded by, nor paid to, any parent regardless of whether they are custodial, joint-custodial, or non-custodial.  (*Id.*)  Moreover, OCSE does not collect nor distribute child support payments.  (*Id.*)  In addition, states are not required to, nor do they, certify the purpose for which child support incentives are received.  (*Id.* ¶ 14.)

### 1. Reasonably Described Records

Prior to assessing the adequacy of an agency's search for responsive records, the Court "begin[s] . . . by 'first ascertain[ing] the scope of the request itself.'"  *Clemente v. FBI*, 867 F.3d 111, 116 (D.C. Cir. 2017) (quoting *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995)).  FOIA requires a records request to "reasonably" describe the requested records.  *See* 5 U.S.C. § 552(a)(3)(A).  In determining the scope of a request, an agency "has a duty to construe a FOIA request liberally," *Inst. for Justice v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019) (quoting *Nation Mag., Wash. Bureau*, 71 F.3d at 890), and to "read FOIA requests 'as drafted,'" *Machado*

*Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) ("The agency was bound to read it as drafted, not as either agency officials or [FOIA requester] might wish it was drafted.")). At the same time, agencies are not required to search beyond "'the four corners of the request,' nor are they 'required to divine a requester's intent.'" *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)).

The Government argues that Plaintiff's FOIA request is based on a misunderstanding[7] about how the incentive payments work but construed the request broadly and provided records concerning California's performance related to incentive payments and the amount of incentive payments received by the state. (Dkt. No. 17 at 17.) Plaintiff's FOIA request, itself, is not a model of clarity and his request is not clearly articulated in his briefs.[8] At the hearing, it was clarified that Plaintiff is seeking the

---

[7] Plaintiff argues that the Government had a duty to ask for clarification of his request if they believed he misunderstood how the incentive payments worked within 20 days of receiving the request citing 5 U.S.C. § 552(a)(6)(A). (Dkt. No. 21 at 8.) However, 5 U.S.C. § 552(a)(6)(A) does not impose a duty on the agency to seek clarification but directs the agency to notify the requester within 20 days of receipt of the FOIA request whether it would comply with the request. 5 U.S.C. § 552(a)(6)(A). Here, the Government states it was not confused about the request as it liberally construed the FOIA request and produced over 1,000 pages of documents. (Dkt. No. 22 at 2.)

[8] For example, in opposing the summary judgment motion, he explains that he is seeking all records exchanged between the Government and the State of California "authorizing the millions in federal incentives appropriated and paid by the Government to the State of California because child support payments were made by the noncustodial parents, as directed under 42 U.S.C. § 651. Or, was some of the millions of federal incentives the State of California collected . . . receiving child support payments paid by joint custodial parents." (Dkt. No. 21 at 7 (emphasis in original).) Then, in conclusion, he asks the Court to direct the Government to provide him with records regarding the "custodial status of the parents, the parent's names, and their associated case numbers". (*Id.* at 12.) In his summary judgment motion, Plaintiff argues that his FOIA request should be reasonably interpreted to include any and all records pertaining to the existence, the number and type of "legally enforceable" orders certified from California for child support that California provided to the Government for purposes of receiving federal incentives because these documents will show if the child support orders are for joint custodial parents or noncustodial parents. (Dkt. No. 18 at 9-12.) He explains the certification process for approval of the State's child support Plan "should have case numbers or numbers associated with the legally enforceable orders that will indicate or provide insight if these are noncustodial/absent parents." (*Id.* at 10.) In reply, Plaintiff similarly requests documents submitted to the Government by "California that declare a

underlying data of child support orders containing case numbers, the parent's names and the parent's custodial status that were used to calculate incentive payments and he contends the FOIA request can be reasonably interpreted to include this data.

In reply, the Government contends despite the production of documents, he now seeks additional records that are beyond the scope of his FOIA request. (Dkt. No. 22 at 2.) According to the Government, Plaintiff originally sought records concerning California's yearly certification of its child support programs, federal incentive payments to California and records where California "certified the child support incentives they received were for child support payments received by 'non-custodial parents'" but this request does not support the disclosure of "any and all records that show the custodial status of the parent. . . ." (*Id.* at 2-3.)

Here, the disputed FOIA request at issue seeks "any and all information, letter, certifications, correspondences, all data . . . where the State of California or it's [sic] counties certified the child support incentives they received were for child support payments received by 'non-custodial parents', and/or are they receiving incentive money for child support payments received by 'custodial' or 'joint-custodial parents'". (Dkt. No. 17-1, Smith Decl., Ex. B.)

The Court agrees with the Government that a reasonable interpretation of Plaintiff's request is producing documents where California "certified the child support incentives they received were for child support payments received by 'non-custodial parents'" and/or "custodial or joint-custodial parents." (Dkt. No. 22 at 2-3.) A reasonable reading of the FOIA request does not support Plaintiff's argument that he sought the underlying child support orders to include the parent's name, custodial status

---

parent noncustodial or joint custodial during the process of the Government authorizing child support incentives to California . . ." (Dkt. No. 23 at 10.) Specifically, he wants records concerning the custodial status of the parents, the parents' names and their associated case numbers. (*Id.* at 12.)

of the parent and the case numbers.  Next, the Court considers whether the Government conducted an adequate search of the FOIA request.

### 2. Adequacy of the Search

Defendants move for summary judgment arguing their search was made in good faith and reasonable.  (Dkt. No. 17 at 18.)  They produced documents to Plaintiff regarding California's performance related to incentive payments and the amount of incentive payments received by California.  (Dkt. No. 20 at 8.)  Plaintiff responds that Defendants' search was not adequate because the search terms did not include "noncustodial parents" or "joint custodial parents," (Dkt. No. 23 at 6.)  Moreover, he asserts that the Government had a duty to seek clarification.  (*Id.* at 7.)

"FOIA requires an agency responding to a request to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (internal citation and quotation marks omitted).  To demonstrate "the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985).  "In evaluating the sufficiency of an agency's search, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Lahr v. Nat'l Transp. Safety Bd*., 569 F.3d 964, 987 (9th Cir. 2009).  "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin*., 45 F.3d 1325, 1328 (9th Cir. 1995).  "[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Hamdan*, 797 F.3d at 771. "Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value." *Id.* at 779.  Thus, where an agency's declarations "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Lewis,* 823 F.2d at 378 (citation and internal quotation marks omitted).

Here, Defendant provides a detailed declaration from the Director of ACS/FOIA explaining the search it conducted including the terms searched and databases searched. (Dkt. No. 17-1, Smith Decl. ¶¶ 11-46.) OCSE initially searched electronic files organized by State with sub-folders organized by year from 2013 to the present, and the hard copy State Plan binders that were in existence and maintained until they were replaced by OCSE's electronic State Plan system in 2015. (*Id.* ¶ 19.) The Government used keywords "State Plan", "transmittal" "annual report to congress" "preliminary data reports" "incentive payments" and the date range of "2013-2019". (*Id.* ¶ 22.) Initially, it had excluded documents subject to Exemption (b)(5) but reconsidered and produced those documents to Plaintiff. (*Id.* ¶¶ 27, 28.) It also produced the California State plan even though it was not requested but produced it out of an abundance of caution. (*Id.* ¶ 29.) It conducted another electronic search for files in the OCSE state plan system, OCSE website, Annual Report to Congress, Online Data Collection system, correspondence files of OCSE staff, and Preliminary Data Report using the search terms: "2013 to 2019," "CA," "State plan amendments," "Annual Report to Congress," and "Preliminary Data Report." (*Id.* ¶ 31.)

After the second production, Plaintiff emailed defense counsel seeking California's IRR, FCR, and ICR as well as OSCE-34, OSCE-157 and OCSE-396. (*Id.* ¶ 36; *id.*, Ex. F.) As to OCSE-34, OCSE-157 and OCSE-396, even though they were not responsive to the FOIA request, the Government conducted a search and produced these documents. (*Id.* ¶¶ 38-42.) These reports are used by states to report data necessary for calculation of each states' incentive fund amount but do not provide approval or amounts of incentive payments. (*Id.* ¶ 38.) However, as to California's IRR, FCR and ICR, Defendants stated they were not responsive to any of Plaintiff's FOIA request "because they are not used to calculate incentive payments." (*Id.* ¶ 37.) Further, even, if it were responsive, they could not be released as they contain personally identifiable information. (*Id.*) Moreover, the states do not provide them with copies of their child support orders as part of the certification process or incentive payment process and OCSE does not review to

determine if child support orders are valid or enforceable. (Dkt. No. 20-10, Smith Suppl. Decl. ¶ 5.)

In reply, Plaintiff claims that the Government's search was not adequate because the Government's search terms did not include "noncustodial parent" or "joint custodial parent". (Dkt. No. 23 at 5-6.) The Court disagrees. The Court determined above that the scope of the FOIA request included all information where California "certified the child support incentives they received were for child support payments received by 'non-custodial parents'" and/or "custodial or joint-custodial parents." But, in a declaration, Defendants declare that states are not required and do not certify the purpose for which child support incentives are received. (Dkt. No. 17-1, Smith Decl. ¶ 14.) Plaintiff does not produce any evidence to dispute Defendant's evidence that state do not certify the purpose for which child support incentive are received. Therefore, because California does not certify the purpose for which child support incentives are received they did not have to conduct a search to include the terms "custodial" "non-custodial" or "joint custodial" parents. Therefore, Defendants conducted an adequate search of their records.

In addition, in his reply and at the hearing, Plaintiff argued that Defendants admitted they withheld the IRR, FCR and ICR reports because those records contained personal and private information implicitly admitting the IRR, FCR and ICR records were responsive. (Dkt. No. 23 at 7.) He further claims that Defendants cannot withhold records solely because they contain personal and private information because those documents may be redacted to remove personal identifying information. (*Id.* at 7-8.) The Court disagrees. Defendants, by way of the Smith declaration and at the hearing, explained that as an initial matter, the IRR, FCR and ICR were not responsive to Plaintiff's request because these registries are not used to calculate incentive payments. (Dkt. No., Smith Decl. ¶ 37.) Then they alternatively argue that even if the IRR, FCR and ICR were responsive, they could not be produced because they contain personally identifiable information such as names, addresses, dates of birth and social security

numbers.  (*Id.*)  Because the IRR, FCR and ICR were not responsive, Defendants did not improperly withhold these documents.

At the hearing, Plaintiff additionally argued that after the initial production, if the Government was unclear as to what Plaintiff was seeking, it had a duty to ask Plaintiff for clarification.  Because Plaintiff indicated there is caselaw to support an agency's duty to seek clarification once it has already produced documents, the Court directed the parties to submit a one page brief on whether after the initial production is made, an agency has an ongoing duty to confer with the requesting party regarding any confusion as to what the requester was seeking.

In his brief, Plaintiff has not provided legal authority that the agency has a duty to confer with the requesting party regarding clarification of his request after it has produced responsive documents.  Instead, he cites to cases that address issues beyond what the Court sought briefing on which the Court declines to address.  The Court also finds those cases are not relevant to the issues in this case.  (*See* Dkt. No. 27.)

For example, *Yagman v. Pompeo*, 868 F.3d 1075, (9th Cir. 2017), dealt with the issue of whether the FOIA request reasonably described the requested records.  In that case, the Ninth Circuit remanded the case to the "district court with instructions to allow Yagman to reframe his request for documents in light of our holding and the CIA's repeated offers to assist him in formulating a reasonably specific request." *Id.* at 1084. Despite the requester's argument that his request was not vague, the court found that the request was "poorly framed" because it did not identify specific persons, specific documents, types of documents, types of information, nor any times, dates, locations, or the specific identity of persons. *Id.* at 1081.  The Ninth Circuit explained that giving the CIA another an opportunity to assist in developing a more descriptive request was appropriate and warranted in light of the fact that its own regulations state that requests "which do not meet [the reasonable description] requirements will be considered an expression of interest and the Agency will work with, and offer suggestions to, the potential requester in order to define a request properly", 32 C.F.R. § 1900.12(c).  *Id.*

(citing *Hall & Assocs. v. EPA,* 83 F. Supp. 3d 92, 104 (D.D.C. 2015) (directing the defendant agency to cooperate with the plaintiff "in accordance with [its] FOIA regulations," which require the agency to assist those requesting records)).

In contrast, Plaintiff's FOIA request reasonably described what he was seeking by providing the specific federal program, the statute, the specific state of California, specific years and what he was seeking. Therefore, *Yagman* does not support Plaintiff's argument concerning Defendants' duty to seek clarification either before or after they produced responsive documents.

Plaintiff's citation to *Davis Wright Tremaine LLP v. United States Custom & Border Protection*, No. C 19-334 RSM, 2020 WL 3258001, at * 8 (W.D. Wash. June 16, 2020), is also not supportive and Plaintiff misstates its holding. The district court noted a number of deficiencies in the government's search with one being that the CBP failed to "consult" with Todd Owen, a CPB official, who has the most knowledge about the information sought. *Id.* at *7. The court did not hold that the agency had a duty to consult with the requester.

On the other hand, Defendants provide caselaw to support their argument that "[a] reasonable effort to satisfy [a FOIA request] does not entail an obligation to search anew based upon a subsequent clarification." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996). While persuasive, the Court notes that in this case, Plaintiff did not seek to clarify his original request but instead sought to expand his original request. The Court concludes that Defendants conducted an adequate search and that they did not have a duty to seek clarification before or after they produced responsive documents.

Accordingly, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.[9]

///

---

[9] Because the Court grants Defendants' motion for summary judgment, the Court DENIES Plaintiff's request for costs as moot.

18

**Conclusion**

Based on the reasoning above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment. The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: March 15, 2021

Hon. Gonzalo P. Curiel
United States District Judge